**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**February 6, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

JORGE LUIS BRAVO,

      Petitioner-Appellant,

  v.

TIM O'DELL, Warden,

      Respondent-Appellee.

No. 05-6111
(D.C. No. 04-CV-00974-W)
(W.D. Okla.)

**ORDER**

Before **McCONNELL**, **ANDERSON**, and **BALDOCK**, Circuit Judges.

Jorge Luis Bravo was convicted by a jury in Comanche County, Oklahoma

of: (1) murder in the first degree, felony murder; and (2) conspiracy to commit

robbery with a dangerous weapon. The murder and robbery occurred at a U-Haul

store in Lawton, Oklahoma, where Mr. Bravo was employed, and the murder

victim was J.C. Perryman, Jr., another U-Haul employee. Mr. Bravo was

sentenced to life imprisonment on the felony murder charge and seven-years'

imprisonment on the conspiracy charge, with the sentences to be served

consecutively. Mr. Bravo's convictions were affirmed by the Oklahoma Court of

Criminal Appeals (OCCA) on direct appeal. *See* Aplt. App., Vol. II at 103-10.

Mr. Bravo now seeks a certificate of appealability (COA) to appeal the district court's order denying his application for a writ of habeas corpus under 28 U.S.C. § 2254. We deny his request for a COA and dismiss this appeal.

**I. Background.**

In his report and recommendation to the district court, the magistrate judge accurately summarized the background of this case as follows:

> Petitioner Bravo was charged along with three co-defendants, Isaiah Walton, Bruce Taylor, and Maurice Poole, with shooting J.C. Perryman, Jr. during the robbery or attempted robbery of a U-Haul store in Lawton, Oklahoma, on October 21, 2000. Petitioner's trial was severed at his request from those of his co-defendants/co-conspirators and his trial was conducted on February 11-15, 2002, in the Comanche County District Court. The jury found Petitioner guilty on both charges and recommended a sentence of seven years of imprisonment for the conspiracy conviction. In a second stage proceeding concerning only the murder conviction, the jury was instructed to consider whether Petitioner should receive the death penalty for the homicide based on the aggravating circumstance of knowingly creating a risk of death to more than one person. The jury recommended a sentence of life imprisonment with the possibility of parole. Petitioner was sentenced on February 28, 2002, in accordance with the jury's verdict, and the presiding judge ordered that the sentences be served consecutively.

> Petitioner appealed the convictions, asserting as grounds for relief that (1) the State presented insufficient evidence to support the convictions, (2) Petitioner's convictions violate the constitutional prohibition against double jeopardy and Okla. Stat. tit. 21, § 11 (1991), (3) the trial court committed reversible error and violated Petitioner's rights under the Sixth and Fourteenth Amendments by suppressing evidence regarding the confession of co-defendant Isaiah Walton, (4) the trial court committed reversible error by failing to hold a "Harjo" hearing to determine the scope, object, and duration of the alleged conspiracy, (5) Petitioner was prejudiced and his right

-2-

to an impartial jury was violated when the trial court failed to vacate the verdict on the issue of guilt or innocence after a juror disclosed a communication with a member of the victim's family prior to the entry of the verdict, (6) Petitioner was denied a fair trial as a result of improper leading and suggestive questioning by the prosecutor during trial, (7) the trial court's error in failing to instruct the jury concerning the use of accomplice testimony denied petitioner a fair trial, and (8) cumulative errors during the trial denied Petitioner a fair trial. The State responded in opposition to the issues raised by Petitioner in his appeal. In a summary opinion filed May 15, 2003, the [OCCA] affirmed Petitioner's convictions.

Aplt. App., Vol. I at 5-7 (citations omitted).

## II. Standard of Review.

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make the necessary substantial showing, "a petitioner must sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quotations omitted).

In addition, "AEDPA's deferential treatment of state court decisions must be incorporated into our consideration of a habeas petitioner's request for COA." *Dockins v. Hines*, 374 F.3d 935, 938 (10th Cir. 2004). Because "we incorporate AEDPA deference into our COA analysis, . . . [Mr. Bravo] cannot obtain a COA

unless we find that reasonable jurists could debate whether the [OCCA's] decision was not merely wrong but *unreasonable*, either as a determination of fact or as an application of clearly established federal law." *Id.* at 940.

### III. Issues Three Through Eight.

In this appeal, Mr. Bravo is seeking habeas relief based on the same issues that he raised on direct appeal and in the district court. *See* Aplt. Br. at 1-2. Having considered issues three through eight (double jeopardy, suppression of confession of co-defendant, failure to hold a "Harjo" hearing, unauthorized communication between a member of the jury and a member of the victim's family, prosecutorial misconduct, and cumulative error), we deny Mr. Bravo's request for a COA on those issues for substantially the same reasons set forth in the magistrate judge's well-reasoned and thorough report and recommendation. *See* Aplt. App., Vol. I at 12-30.

### IV. Sufficiency of the Evidence.

The only remaining issue for us to consider is "[w]hether the district court erred in holding that the [OCCA] did not unreasonably apply the standard of <u>Jackson v. Virginia</u> in holding that sufficient evidence was presented to support Mr. Bravo's conviction[s] for First Degree Murder and Conspiracy to Commit Robbery [with a Dangerous Weapon]." Aplt. Br. at 1. We conclude that the district court did not err.

"When reviewing the sufficiency of the evidence in a habeas corpus action 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Dockins*, 374 F.3d at 939 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis omitted)). "This standard of review respects the jury's responsibility to weigh the evidence and to draw reasonable inferences from the testimony presented at trial." *Id.* As noted above, because the OCCA "rejected [Mr. Bravo's] claim of insufficient evidence on its merits, . . . we [also] incorporate the deference for state court decisions called for by AEDPA in evaluating [his] request for COA." *Id.*

As pointed out by the magistrate judge, "[i]n this case, the sufficiency of the evidence inquiry is based on Oklahoma law which defines the substantive elements of the crime[s]." Aplt. App., Vol. I at 10 (citing *Jackson*, 443 U.S. at 309, 324 n.16). As further explained by the magistrate judge, under Oklahoma law,

> ["]A person . . . commits the crime of murder in the first degree, regardless of malice, when that person or any other person takes the life of a human being during, or if the death of a human being results from, the commission [or attempted commission of] . . . robbery with a dangerous weapon. . . ." Okla. Stat. tit. 21, § 701.7[B]. In Oklahoma, a conspiracy to commit robbery with a dangerous weapon requires proof of an agreement by two or more persons to commit robbery with a dangerous weapon and an overt act by one or more of

the parties performed subsequent to the formation of the agreement in furtherance of the agreement. *Jones v. State*, 965 P.2d 385, 386 (Okla. Crim. App. 1998).

*Id.*

On direct appeal, the OCCA concluded that there was sufficient evidence to support both of Mr. Bravo's convictions. With regard to the conspiracy conviction, the OCCA found that "the existence of the conspiracy is clearly supported by evidence that an agreement to rob the U-Haul store was reached between [Mr. Bravo] and the other conspirators." *Id.*, Vol. II at 105. With regard to the felony murder conviction, the OCCA determined "that a rational trier of fact could have found that [Mr. Bravo] was in the commission of the robbery when Perryman was shot by one of the co-conspirators." *Id.* We agree with the district court that "the OCCA's determination that there was sufficient evidence presented at trial to support the jury's findings that Bravo was guilty of murder in the first degree . . . and conspiracy to commit robbery with a dangerous weapon . . . was neither contrary to, nor an unreasonable application of federal law." *Id.*, Vol. I at 33.

First, as set forth in the magistrate judge's report and recommendation, there is an abundance of evidence in the trial court record to support Mr. Bravo's conspiracy conviction. *Id.* at 11-12. Because the magistrate judge accurately

summarized the relevant evidence that supports the conspiracy conviction, we see

no need to discuss that evidence here.

Second, while it is a much closer issue, we also conclude that the state

presented sufficient evidence to support the felony murder conviction. In

accordance with Oklahoma law, the jury was instructed as follows with regard to

the felony murder charge:

> The defendant, Jorge Luis Bravo, is charged in the information with Count I, murder in the first degree felony murder, . . . in the manner and form as follows, to wit: that the said Jorge Luis Bravo, on the 21st day of October, 2000, in Comanche County, Oklahoma, did conjointly while acting together with Bruce Latarrance Taylor, Isaiah Crayton Walton, and Maurice Poole, unlawfully, wilfully, knowingly, and feloniously . . . affect the death of one J.C. Perryman, Jr., . . . by shooting him in the head with an Intertec nine millimeter pistol, causing mortal wounds in the body of the said J.C. Perryman, Jr., . . . all while the said defendants were engaged in committing the felony of robbery with a dangerous weapon, 21 Oklahoma Statute Section 801 . . . .

> . . . .

> No person may be convicted of murder in the first degree felony murder unless the State has proved beyond a reasonable doubt each element of the crime. These elements are, first, the death of a human; second, the death occurred as a result of an act or event which happened in the commission of a robbery or attempted robbery with a dangerous weapon; third, caused by any person engaged with the defendant while in the commission of a robbery with a dangerous weapon . . . .

> A person is in the commission of robbery or attempted robbery with a dangerous weapon when he is performing an act which is necessary in order to complete the course of conduct constituting robbery with a dangerous weapon. . . .

*Id.*, Vol. VI at 735-38.

Mr. Bravo is not challenging the correctness of these instructions. As a result, we will assume that they are correct under Oklahoma law, and that the jury was properly instructed with regard to the elements of the felony murder charge. In addition, Mr. Bravo does not dispute that Taylor, Walton, and Poole were engaged in the commission of a robbery or an attempted robbery with a dangerous weapon at the time one of them shot Perryman. Mr. Bravo claims, however, that he was not engaged in the commission of the robbery or attempted robbery because: (1) he was not inside the U-Haul store at the time of the robbery or attempted robbery, but was instead outside of the store performing his regular end-of-the-day closing duties; and (2) he "performed not one act which could be described as an act necessary to complete the illegal course of conduct," Aplt. Br. at 35, and he therefore "did nothing to further or aid the ability of the co-defendants to rob the U-Haul office," *id.* at 34.

We reject Mr. Bravo's claim that the state failed to put forth evidence showing that he performed an act which was necessary to complete the robbery or attempted robbery. A videotape and written transcript of Mr. Bravo's third statement to the police were admitted into evidence during the prosecution's case-in-chief, and Mr. Bravo's statement provides the evidentiary support for the felony murder conviction. *See* Aplt. App., Vol. V at 585-88, 597; Vol. VI

-8-

at 658-660; Vol. VIII at 960-1054. Specifically, in his statement to the police, Mr. Bravo stated: (1) that he met with Taylor approximately an hour and a half before the robbery took place; (2) that Taylor informed him that the robbery was going to take place that evening; and (3) that he informed Taylor that there would be only one employee inside the U-Haul store if the robbery took place at 6:45 p.m. that evening.[1] *Id.*, Vol. VIII at 1020-21, 1023-26. Further, Mr. Bravo admitted that he had planned the robbery with Taylor, *id.* at 1031, and that he knew that Taylor intended to use a gun during the robbery, *id.* at 1034-35. Given this evidence, we agree with respondent that

> [t]he record, including [Mr. Bravo's] own statements, sufficiently proves [Mr. Bravo] knew the robbery was going to take place on the evening of the murder and that he furthered the effort by informing Mr. Taylor that only the victim would be in the building at 6:45 p.m., . . . and by being out of the building while his accomplices were there to complete the robbery.

---

[1]     Mr. Bravo also admitted that he told Taylor that he would leave the keys to the office safe "on top of the safe." Aplt. App., Vol. VIII at 1024. However, it is unclear from the evidence presented at trial whether Mr. Bravo actually did leave the keys on top of the safe. It is also undisputed that the safe was not opened during the robbery. Consequently, we will not consider Mr. Bravo's statement regarding the keys as part of our sufficiency of the evidence review. Similarly, while "[t]here was also evidence presented at trial that a short time before the robbery [Mr. Bravo] aggressively attempted to convince a customer not to come to the [U-Haul] store," Aplt. App., Vol. I at 11, it does not appear that this conduct was "necessary in order to complete the course of conduct constituting [the] robbery," *id.*, Vol. VI at 738. In fact, the robbery took place despite the presence of customer Carolyn Brown inside the U-Haul store, and Ms. Brown was brutally assaulted during the course of the robbery.

Respondent's Resp. to Pet. for Writ of Habeas Corpus at 9 (D. Ct. R., Doc. 12).

Accordingly, because there was sufficient evidence in the trial court record to support Mr. Bravo's conspiracy and felony murder convictions, we conclude that the OCCA's determination of the sufficiency of the evidence issues was reasonable, "either as a determination of fact or as an application of clearly established federal law." *Dockins*, 374 F.3d at 940.

The application for a COA is DENIED and this matter is DISMISSED.

Entered for the Court
ELISABETH A. SHUMAKER, Clerk

By:
        Deputy Clerk

-10-